1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MEGAN OLSEN,                          No. 2:22-cv-02294-DJC-JDP

12            Plaintiff,

13        v.                                ORDER GRANTING DEFENDANT'S
                                            MOTION FOR SUMMARY JUDGMENT
14    COSTCO WHOLESALE
      CORPORATION; and DOES 1 through
15    50, inclusive,

16            Defendant(s).

17

18        While working for Defendant, Plaintiff injured her foot and was left with physical

19    limitations.  After taking unpaid medical leave for approximately two years, Plaintiff

20    obtained permanent medical restrictions.  Plaintiff presented these restrictions to

      Defendant, and both parties agreed that Plaintiff could not return to her prior position.
21
      Plaintiff and Defendant engaged in an interactive process but ultimately failed to find
22
      an available position for which Plaintiff was qualified.  After Defendant terminated
23
      Plaintiff's employment, Plaintiff brought suit for state law claims, including failure to
24
      accommodate, discrimination, and retaliation.  Defendant now moves for summary
25
      judgment, arguing that it complied with its legal duties before terminating Plaintiff's
26
      employment.  For the reasons stated below, the Court GRANTS Defendant's Motion
27
      for Summary Judgment (ECF No. 60).
28

1

**BACKGROUND**

Plaintiff Megan Olsen began working for Defendant Costco Wholesale Corporation in 2002. (Molineaux Decl., Ex. 17, Olsen Dep. 20:15–17, ECF No. 74-21.)[1] On February 21, 2018, Plaintiff suffered a workplace injury to her foot. (*Id*. 34:24–35:1.) On June 18, 2018, Plaintiff took unpaid medical leave. (*Id*. 81:14–21.) In January 2021, while still on leave, Plaintiff obtained from her medical provider permanent restrictions, which were sent to Defendant. (*Id*., Ex. 12.) Plaintiff and Defendant thereafter met on two occasions to discuss her return to work, and they concluded that she was unable to return to the position she held when she was injured. (*Id*., Exs. 13, 25.) Defendant sent Plaintiff available positions, though Plaintiff never applied for any position or requested an accommodation to perform any available position. (*Id*., Exs. 15–20.) Because Plaintiff had exhausted her medical leave and there was no available position for which she was qualified, Defendant terminated Plaintiff's employment on April 19, 2022 – nearly four years after she went on medical leave. (*Id*. 140:21–141:4.)

Plaintiff originally filed her complaint ("the Complaint") in the County of Solano Superior Court, and Defendant timely removed the case to this Court under diversity jurisdiction. (Notice of Removal, Ex. A, ECF No. 1.) Based on the parties' stipulation that was granted by the Court, five causes of action were dismissed with prejudice. (Order Granting Joint Stipulation, ECF No. 58.) Accordingly, Plaintiff maintains six state law claims, largely pursuant to California's Fair Employment and Housing Act ("FEHA"): (1) retaliation; (2) discrimination; (3) failure to provide reasonable accommodation; (4) failure to engage in the interactive process; (5) failure to prevent discrimination; and (6) wrongful termination.[2] (Complaint at 1, ECF No. 1.)

---

[1] For some portions of Olsen's deposition, *see* Emrani Decl., Ex. A, ECF No. 60-2.

[2] Plaintiff technically maintains seven causes of action, but she brings two claims each for discrimination and retaliation. As explained below, the Court only conducts one discrimination analysis and one retaliation analysis. *See infra* Discussion Parts III, V.

1    Defendant now moves for summary judgment as to all claims. (Mot., ECF No.

2    60.) Plaintiff opposed, albeit two days late. (*See* Opp'n, ECF No. 74; Minute Order,

3    ECF No. 68.) While Defendant urges the Court to construe Plaintiff's failure to file a

4    timely opposition as a non-opposition to the Motion, the Court declines Defendant's

5    request and considers Plaintiff's brief in reaching its decision. (*See* Reply at 1, ECF No.

6    76.) Accompanying its Reply, Defendant submitted a list of evidentiary objections.

7    (Evidentiary Objections, ECF No. 76-3.) Because the Court reaches its decision in

8    favor of Defendant even when considering the totality of Plaintiff's evidence, these

9    objections are rendered moot.

10    The matter is fully briefed. On August 7, 2025, the Court heard oral argument

11    from the parties on this motion and took the matter under submission. (ECF No. 90.)

12                                        **LEGAL STANDARD**

13    Summary judgment is appropriate when the record, read in the light most

14    favorable to the non-moving party, indicates "that there is no genuine dispute as to

15    any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

16    Civ. P. 56(a). A genuine dispute of fact exists only if "there is sufficient evidence

17    favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v.*

18    *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make this

19    showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*

20    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

21                                          **DISCUSSION**

22    The Court discusses the following issues: (1) reasonable accommodation;

23    (2) interactive process; (3) discrimination; (4) failure to prevent discrimination;

24    (5) retaliation; and (6) wrongful termination.

25    **I.      Reasonable Accommodation**

26    The Court first discusses the factual timeline underlying this claim before

27    analyzing the legal merits.

28    *////*

                                                3

1

    **A.**    **Timeline**

2

        **1.**    **Plaintiff's Injury and Return to Work**

3

        On February 21, 2018, Plaintiff suffered a workplace injury that resulted in

4

damage to her right foot. (Olsen Dep. 34:24–35:1.) Two days later, Plaintiff saw her

5

medical provider, Dr. Phillip Wagner, who placed Plaintiff on modified activity such

6

that Plaintiff could only stand up to 25% of her shift and walk up to 25% of her shift.

7

(Olsen Dep., Ex. 5.) Plaintiff testified that in the weeks after her injury, Defendant did

8

not adhere to these work restrictions. (*Id*. 65:1–21.) On March 8, 2018, Dr. Wagner

9

took Plaintiff off work. (Molineaux Decl., Amended Ex. 2 at 32, 42–43, ECF No. 78-2.)

10

On April 12, 2018, Dr. Wagner allowed Plaintiff to return to work with the same

11

modified restrictions as issued in February. (*Id*. at 41.) Plaintiff testified that her

12

restrictions were once again violated. (Olsen Dep. 73:23–74:10.) In June 2018,

13

Plaintiff "called workmen's comp and complained" about Defendant not following her

14

restrictions. (*Id*. 77:3–12.) The day after making the complaint, Defendant's

15

employees held a meeting with Plaintiff, at which Plaintiff represents she was told, "we

16

think that it's best that you go back out on leave until you are fully recovered and can

17

come back to work with no accommodations." (*Id*. 79:21–81:21.) Plaintiff does not

18

testify that she disagreed with Defendant's recommendation or otherwise expressed

19

concerns with the suggestion she take unpaid leave. (*See id*.) Instead, Plaintiff

20

accepted Defendant's recommendation, and her last day of work was June 18, 2018.

21

(*See id*.; Golston Decl. ¶ 13, ECF No. 60-3.)

22

        **2.**    **Permanent Restrictions and the First Job Assessment Meeting**

23

        Plaintiff remained on unpaid medical leave for nearly two years without any

24

evidence of communication between her and Defendant, though Defendant did

25

routinely receive notes from Dr. Wagner that alternated between Plaintiff being

26

placed on modified activity and being placed off work due to injury. (Emrani Decl., Ex.

27

H at 114–126, ECF No. 76-1; Molineaux Decl., Amended Ex. 2 at 24–28.) On June 3,

28

2020, Dr. Wagner concluded that Plaintiff had reached Maximal Medical Improvement

1  and therefore was deemed Permanent and Stationary, meaning that Plaintiff was

2  unlikely to further recover from her injuries.  (Molineaux Decl., Amended Ex. 5 at 10,

3  ECF No. 78-4.)  On June 23, 2020, Defendant's third-party coordinator contacted

4  Plaintiff to schedule a meeting to discuss reasonable accommodations now that she

5  was permanently disabled.  (Emrani Decl., Ex. I.)  Plaintiff requested to wait until after

6  her July 2020 Qualified Medical Evaluation – which was related to her worker's

7  compensation claim for her injury – because she believed her restrictions might

8  change following this medical appointment.  (*See id.*; Molineaux Decl., Ex. 19, Parisi

9  Dep. 86:14–87:25, ECF No. 74-23.)  In the interim, on June 29, 2020, Plaintiff obtained

10  from Dr. Wagner the following permanent restrictions: Plaintiff could only stand up to

11  25% of her shift, could only walk up to 25% of her shift, and could not lift, carry, push,

12  or pull more than 10 pounds.  (Olsen Dep., Ex. 7.)

13       On July 13, 2020, Dr. Jacquelyn Weiss – the medical provider who was

14  selected to conduct the Qualified Medial Evaluation – concluded that Plaintiff was

15  Permanent and Stationary and that she had a permanent disability.  (Molineaux Decl.,

16  Amended Ex. 6 at 28–29, ECF No. 78-5.)  Dr. Weiss further concluded that Defendant

17  "could work in a capacity where she spent most of her time sitting and weightbearing

18  less than 10-15% of the day." (*Id*. at 29.)  On January 12, 2021, Dr. Wagner issued

19  Plaintiff the same permanent restrictions as issued on June 29, 2020.  (Olsen Dep., Ex.

20  12.)  After receiving Dr. Wagner's notes from the January 2021 appointment,

21  Defendant contacted Plaintiff to schedule a meeting.  (Molineaux Decl., Amended Ex.

22  3 at 5, ECF No. 78-3.)  Defendant represents that it waited until after the January 2021

23  appointment to begin the interactive process because it believed that Plaintiff's

24  permanent restrictions were not yet confirmed as of July 2020.  (*See* Reply at 2.)

25  Plaintiff characterizes this delay as unnecessary (Opp'n at 4), and Defendant asserts

26  that it waited until further medical confirmation because it was confused by Dr. Weiss's

27  recommendation that Plaintiff needed to spend "most of her time sitting and

28  weightbearing less than 10-15% of the day." (Emrani Decl., Ex. I.)  There is no

1    evidence, however, that Plaintiff contacted Defendant between July 2020 and January

2    2021 to schedule a meeting.

3        On February 23, 2021, Plaintiff and Defendant participated in a Job Assessment

4    Meeting ("JAM") to discuss her permanent restrictions and possible return to work.

5    (*Id.*, Ex. 13.)  The parties discussed the essential functions of Plaintiff's former position

6    as a Return-to-Vendor ("RTV") Clerk, which included standing, walking, and handling

7    more than 10 pounds for tasks such as checking in damaged and defective

8    merchandise, organizing, and helping customers.  (*Id.*)  When asked by Defendant,

9    Plaintiff did not have any suggested modifications that would allow her to perform

10    these essential functions.  (*Id.*)  Because Defendant also did not have any suggested

11    modifications, the parties agreed: "Costco is unable to offer Return-to-Vendor Clerk

12    (full-time) with or without accommodation."  (*Id.*)

13        At the February 23, 2021 JAM, the parties did not discuss alternative positions

14    because the warehouse where Plaintiff worked did not have any available positions to

15    review at that time.  (*Id.*)  Defendant told Plaintiff that it would send her postings for

16    available positions within or below her classification at three warehouses (which

17    Plaintiff chose) for at least the following 60 days.  (*Id.*)  Plaintiff was instructed to apply

18    for any position that she was interested in by following the posting's directions.  (*Id.*)

19    Because Plaintiff had already used over the year of leave that Defendant ordinarily

20    offers employees, Defendant advised Plaintiff that it might terminate her employment

21    after 60 days if she was unable to return to work.  (*Id.*)

22        Over the following three months, Defendant sent Plaintiff open and available

23    positions on eleven occasions, each time ranging from two to six positions for Plaintiff

24    to read through and consider.  (Olsen Dep., Exs. 15–20.)  Plaintiff did not apply for any

25    of these positions.  (Olsen Dep. 104:9–12, 105:11–15, 107:2–5, 107:22–25, 109:12–15,

26    111:20–24.)  On July 20, 2021, Carl Golston, Defendant's General Manager, sent

27    Plaintiff a letter stating that because over 60 days had passed since her JAM,

28    Defendant would terminate her employment if she did not voluntarily resign.  (*Id.*, Ex.

6

1    21.)  On November 17, 2021, Golston sent Plaintiff a letter offering to hold another

2    JAM to review her potential return to work.  (*Id*., Ex. 22.)

3    ### 3.    The Second Job Assessment Meeting and Plaintiff's

4    ### Termination

5    On January 19, 2022, the parties held a second JAM.  (*Id.*, Ex. 25.)  Plaintiff

6    represented that her permanent work restrictions had remain unchanged since the

7    first JAM.  (*Id.*)  The parties again agreed that Plaintiff would not be able to perform

8    the essential functions of an RTV Clerk.  (*Id*.)  There also was no available position for

9    which Plaintiff was qualified, and Defendant told Plaintiff that it would again send her

10   available positions.  (*Id*.)  Defendant further advised that if Plaintiff was unable to

11   return to work within the following 15 days, it would terminate her employment.  (*Id*.)

12   At the second JAM meeting, Plaintiff told Defendant that she had heard from

13   former coworkers that there had been an opening for a Payroll Clerk position, and

14   Plaintiff represented that she could have performed this role.  (*Id.*)  In response, on

15   February 8, 2022, Golston sent Plaintiff a letter that explained she could not perform

16   the essential functions of the Payroll Clerk role.  (*Id.*, Ex. 28.)  Specifically, Plaintiff still

17   could not lift, carry, push, or pull more than 10 pounds, and the Payroll Clerk's

18   essential functions included lifting more than 10 pounds for handling documents and

19   moving boxes.  (*Id*.)  Golston stated that if Plaintiff wanted to discuss possible

20   accommodations that would allow her to perform a Payroll Clerk position were one to

21   become available, she needed to contact him by February 18, 2022.  (*Id*.)  Plaintiff did

22   not contact Golston.  (Golston Decl. ¶ 23.)  Accordingly, on April 19, 2022 – nearly

23   four years after Plaintiff went on leave – Defendant terminated Plaintiff's employment.

24   (*Id*. ¶ 24; Olsen Dep. 140:21-141:4.)

25   ### B.    Analysis

26   "The elements of a reasonable accommodation cause of action are (1) the

27   employee suffered a disability, (2) the employee could perform the essential functions

28   of the job with reasonable accommodation, and (3) the employer failed to reasonably

1    accommodate the employee's disability." *Nealy v. City of Santa Monica*, 234 Cal. App.

2    4th 359, 373 (2015) (citations omitted).  If the employee is unable to perform the

3    essential functions of the job even with accommodation, then the employer must offer

4    the employee "comparable" or "lower graded" vacant positions for which they are

5    qualified.  *Id*. at 377.  In cases involving the consideration of other positions, it is the

6    employee's burden to prove that she "was able to perform the essential functions of

7    an available vacant position . . . with or without accommodation." *Nadaf-Rahrov v.*

8    *Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 976–978 (2008).

9           While Plaintiff clearly suffered a disability, she does not present any evidence

10   showing that she could perform the essential functions of an available, open position

11   with or without accommodation.  As such, Plaintiff also cannot establish that

12   Defendant failed to reasonably accommodate her disability.  Because a jury could not

13   find that Plaintiff satisfies the second and third elements of a reasonable

14   accommodation claim, Defendant is entitled to summary judgment.

15          Plaintiff does not dispute that she was unable to perform the functions of the

16   RTV Clerk position she had occupied prior to her disability, with or without

17   accommodations.  (*See* Opp'n at 20.)  Instead, Plaintiff argues that there were three

18   positions available that she could have performed: (1) Payroll Clerk; (2) E-Commerce;

19   and (3) Auditor.  (*Id.* at 15–17.)  The evidence is insufficient for a jury to find that any of

20   these positions were available during the interactive process (i.e. between when

21   Defendant first received Plaintiff's permanent restrictions in June 2020 and when

22   Plaintiff was terminated in April 2022).[3]

23   ////

24

25   _____

     [3] As explained later in this section, Defendant provided Plaintiff with a reasonable accommodation of

26   unpaid medical leave until her disability became permanent in June 2020.  Accordingly, the Court does
     not consider the availability of positions before June 2020 because there is no evidence Plaintiff

27   requested another position before her restrictions became permanent, and thus Defendant was not
     obligated to offer Plaintiff an open position.  *See* Cal. Code Regs. tit. 2, § 11068(c); Cal. Gov't Code

28   § 12940(n) (stating that an employer must engage "in response to a request for a reasonable
     accommodation by an employee . . . ").

1    First, Plaintiff fails to establish that there was an opening for a Payroll Clerk

2    position. Her only proffered evidence clearly shows that the individual who became a

3    Payroll Clerk – the position Plaintiff heard about from former coworkers – had

4    previously been hired and trained for that position, and thus there was not a "open

5    available position" for a Payroll Clerk during the interactive process. (Molineaux Decl.,

6    Ex. 9, Frazier Dep. 226:2–6, Ex. 74-13.) Because there was not a vacant position,

7    Defendant was not obligated to reassign Plaintiff to a Payroll Clerk position. *See*

8    *Watkins v. Ameripride Servs.*, 375 F.3d 821, 828 (9th Cir. 2004) (holding that an

9    employer is only obligated to assign an employee to another position "if there were

10   an *existing*, *vacant* position" for which the employee was qualified) (emphasis

11   original). Moreover, Plaintiff did not respond to Golston when he offered to discuss

12   possible accommodations for her to fulfill the essential functions of a Payroll Clerk role

13   were a position to become available, which led Defendant to the reasonable

14   conclusion that Plaintiff was no longer interested in this role or concluded that she was

15   unable to perform it even with accommodations. (Golston Decl. ¶ 23.)

16   Second, Plaintiff does not show that there was an opening for an E-Commerce

17   position during the interactive process. At oral argument, Plaintiff's counsel

18   represented that Plaintiff presented evidence of such an opening in "Exhibit 2 at page

19   58." The document counsel seemingly referenced is an email from Plaintiff to

20   Defendant asking if she could work in an E-Commerce Role. (*See* Molineaux Decl., Ex.

21   2 at 58, ECF No. 75.) The email makes no mention of an open role that was available

22   to Plaintiff. Rather, Plaintiff inquired as to whether Defendant would consider

23   expanding a seasonal role into a permanent one. This email falls far short of

24   establishing that an E-Commerce role that Plaintiff was interested in was existing and

25   vacant, and Plaintiff presented no other evidence in her briefing.

26   Third, there is no evidence showing that an Auditor position was available

27   during the interactive process. Plaintiff's only proffered evidence is testimony that

28   there were three auditor positions available sometime between 2018 and 2021.

1   (Frazier Dep. 228:9–16.)  This evidence does not establish that such positions were

2   available after June 2020; indeed, the testimony would be just as consistent with the

3   positions being filled sometime between January 2018 and May 2020.  By the

4   summary judgment stage, a plaintiff must be able to establish that a reasonable

5   accommodation was "objectively available during the interactive process." *Scotch v.*

6   *Art Inst. of California*, 173 Cal. App. 4th 986, 1019 (2009).  Plaintiff's evidence is not

7   specific enough to establish that an Auditor role was "objectively available" after June

8   2020, and thus no jury could find based on this evidence that there was an open

9   position during the interactive process for which Plaintiff was qualified.  *See id.*

10          The evidence is undisputed that Plaintiff cannot carry her burden of showing

11  she "was able to perform the essential functions of an available vacant position . . .

12  with or without accommodation." *See Nadaf-Rahrov*, 166 Cal. App. 4th at 976–978.

13  Defendant "was not required to eliminate essential functions from the job to

14  accommodate" Plaintiff.  *See Nealy*, 234 Cal. App. 4th at 377.  Defendant did not need

15  to "provide an indefinite leave of absence to await possible future vacancies."  *See id.*

16  at 377–78.  Defendant also was "not required to create new positions or 'bump' other

17  employees to accommodate" Plaintiff, such as the employee who was trained to

18  become a Payroll Clerk.  *See McCullah v. S. California Gas Co.*, 82 Cal. App. 4th 495,

19  501 (2000) (citations omitted).  Nor was Defendant obligated to "wait indefinitely" for

20  Plaintiff's medical conditions to change or for another position to become available.

21  *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226–27 (1999) (citation

22  omitted).  Because Plaintiff fails to present any evidence for a jury to find that she

23  could perform the essential functions of the RTV Clerk role, or that there was an

24  available position for which she was qualified, Defendant is entitled to summary

25  judgment as to Plaintiff's claim for failure to accommodate.  *Accord Watkins*, 375 F.3d

26  at 829 (affirming summary judgment on reasonable accommodation claim because

27  there was no vacant position for which the plaintiff was qualified); *Martirosyan v.*

28  *United Parcel Serv., Inc.*, No. 2:23-CV-01094-SB-DFM, 2023 WL 6634167, at *4–7 (C.D.

1   Cal. Sept. 26, 2023), aff'd, No. 23-55814, 2025 WL 471111 (9th Cir. Feb. 12, 2025)

2   (granting summary judgment on reasonable accommodation claim because plaintiff

3   did not identify an available, vacant position); *Johnson v. City & Cnty. of San Francisco*,

4   No. 4:15-CV-03011-KAW, 2016 WL 11508086, at *8–11 (N.D. Cal. Dec. 21, 2016)

5   (same); *Rhodes v. Costco Wholesale Corp.*, No. 09-CV-2896 H (BGS), 2011 WL

6   13176693, at *3–4 (S.D. Cal. Apr. 18, 2011) (same).

7       Finally, the Court notes that Defendant provided Plaintiff with a reasonable

8   accommodation beginning in June 2018 when Plaintiff went on leave.  Unpaid

9   medical leave is a reasonable accommodation under state law "provided that the

10   leave is likely to be effective in allowing the employee to return to work at the end of

11   the leave."  *See* Cal. Code Regs. tit. 2, § 11068(c); *see also Jensen v. Wells Fargo Bank*,

12   85 Cal. App. 4th 245, 263 (2000) (holding that unpaid leave is a reasonable

13   accommodation "where it appears likely that the employee will be able to return to an

14   existing position at some time in the foreseeable future").  Plaintiff testified that

15   Defendant wanted her to take leave until she was "fully recovered and can come back

16   to work with no accommodations."[4]  (Olsen Dep. 79:21–81:21.)  At the time Plaintiff

17   went on leave, it had only been three months since she was injured, and there was no

18   evidence indicating that Plaintiff was unlikely to recover from her injury.  As such,

19   Defendant reasonably concluded that leave would likely allow Plaintiff to recover and

20   "return to an existing position at some time in the foreseeable future."  *See Jensen*, 85

21   Cal. App. 4th at 263; Olsen Dep. 80:23–81:5.

22       It was not until June 2020 that Defendant received medical reports

23   demonstrating Plaintiff's permanent restrictions.  (Molineaux Decl., Amended Ex. 5 at

24   10.)  Unpaid leave was a reasonable accommodation until Plaintiff became Permanent

25   _____

26   [4] Plaintiff does not provide any evidence that Defendant required her to take leave, which would violate state law assuming there was another accommodation available.  *See* Cal. Code Regs. tit. 2, § 11068(c).

27   Instead, Plaintiff represents that Defendant's employee told her, "we think it's best that you go back out on leave."  Olsen Dep. 80:23–81:5.  There is no rule forbidding Defendant from making this

28   recommendation, and there is no evidence that Plaintiff disagreed with Defendant's proposal.

1   and Stationary.  "FEHA does not have a fixed limit on the amount of leave required as

2   a reasonable accommodation. A disabled employee is entitled to a reasonable

3   accommodation – which may include leave of no statutorily fixed duration – provided

4   that such accommodation does not impose an undue hardship on the employer."

5   *Zamora v. Sec. Indus. Specialists, Inc.*, 71 Cal. App. 5th 1, 42 (2021).  Much of the

6   caselaw concerning a reasonable accommodation of unpaid leave focuses on

7   situations where an employee was fired instead of being placed on unpaid leave.  *See*

8   *e.g., id.* at 47–48; *Nadaf-Rahrov*, 166 Cal. App. 4th at 988–89; *Shirvanyan v. Los*

9   *Angeles Cmty. Coll. Dist.*, 59 Cal. App. 5th 82, 99 (2020).  While the Court notes that

10  two years of unpaid leave seems excessive, Plaintiff presents no caselaw, nor can the

11  Court locate any, indicating that Defendant violated the law by providing unpaid leave

12  for two years under the belief that Plaintiff's condition would likely improve.  There

13  also is no evidence showing that Defendant's belief that Plaintiff would recover was

14  unreasonable, as Defendant seemingly did not receive any medical reports between

15  June 2018 and June 2020 that showed Plaintiff would not recover from her injury.[5]  In

16  fact, there is no evidence that Plaintiff even contacted Defendant between June 2018

17  and June 2020 to request a different accommodation, such as seeking an alternative

18  position.  If Plaintiff desired a reasonable accommodation other than unpaid leave

19  between June 2018 and June 2020, she had a responsibility to communicate such

20  desire so that the parties could reinitiate the interactive process.  *See* Cal. Gov't Code

21  § 12940(n) (stating that an employer must engage "in response to a request for a

22  reasonable accommodation by an employee . . . "); *Jensen*, 85 Cal. App. 4th at 266

23  (holding that the interactive process is a two-way street, as "it is the responsibility of

24  _____

25  [5] Plaintiff does not mention medical reports between October 2018 and June 2020 in her Statement of
    Facts (ECF No. 80) or her brief.  While it is not the Court's task "to scour the record in search of a
    genuine issue of triable fact," *see Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted),

26  the Court notes that Plaintiff's medical status remained in flux during this period, as she sometimes was
    placed on modified activity and other times placed off work. (*See* Emrani Decl., Ex. H at 114–126;

27  Molineaux Decl., Amended Ex. 2 at 24–28.)  Defendant reasonably waited to act until Plaintiff became
    Permanent and Stationary.

28

1    both sides to keep communications open").

2    **II.    Interactive Process**

3         "The failure to accommodate and the failure to engage in the interactive

4    process are separate, independent claims involving different proof of facts." *A.M. v.*

5    *Albertsons, LLC*, 178 Cal. App. 4th 455, 463–64 (2009) (citation omitted).  While a

6    claim for reasonable accommodation focuses on whether an employer provides an

7    accommodation that was agreed-upon and available, a claim for failure to engage

8    focuses on the process leading up to the identification of a reasonable

9    accommodation in the first place. *See id.* at 464.  "Under FEHA, an employer must

10   engage in a good faith interactive process with the disabled employee to explore the

11   alternatives to accommodate the disability." *Wysinger v. Auto. Club of S. California*,

12   157 Cal. App. 4th 413, 424 (2007) (citing Cal. Gov. Code § 12940(n)).  To prevail on a

13   claim for failure to engage in the interactive process, however, "the employee must

14   identify a reasonable accommodation that would have been available at the time the

15   interactive process occurred." *Nealy*, 234 Cal. App. 4th at 379 (citations omitted).

16   Courts have consistently applied this rule because a claim for failure to engage in the

17   interactive process "has a remedial rather than punitive purpose." *Scotch*, 173 Cal.

18   App. 4th at 1019.   As such, an employer is liable for failure "only if a reasonable

19   accommodation was possible." *Nadaf-Rahrov*, 166 Cal. App. 4th at 981.  For example,

20   in *Scotch*, though the appellate court held that a reasonable jury could find that the

21   defendant failed to engage in the interactive process, it concluded that because the

22   plaintiff had not presented any evidence that a reasonable accommodation "was

23   available during the time period during which the interactive process should have

24   occurred," defendant was entitled to summary judgment.  173 Cal. App. 4th at 1015,

25   1019.  Accordingly, "[u]nless, after litigation with full discovery, [plaintiff] identifies a

26   reasonable accommodation that was objectively available during the interactive

27   process, he has suffered no remedial injury from any violation" of law. *Id.* at 1019.

28   ////

1       Plaintiff argues that Defendant unreasonably delayed initiating the interactive

2   process in 2020.  (Opp'n at 4.)  The Court agrees that Defendant should have initiated

3   the interactive process in June 2020 after it received (1) Dr. Wagner's report that

4   Plaintiff was deemed Permanent and Stationary and (2) a list of Plaintiff's permanent

5   restrictions.  (*See* Molineaux Decl., Amended Ex. 5 at 10; Olsen Dep., Ex. 7.)  Instead,

6   Defendant unreasonably waited until it received the same information in January 2021

7   before it contacted Plaintiff to schedule a meeting in February 2021.  (*Id.*, Amended

8   Ex. 3 at 5.)  However, Plaintiff cannot prevail on her claim simply because Defendant

9   failed to engage.  Instead, she must present evidence that a reasonable

10  accommodation was "objectively available" during this delay.  *See Scotch*, 173 Cal.

11  App. 4th at 1019.  Because the Court already found that there is no evidence that a

12  position for which Plaintiff was qualified was objectively available between June 2020

13  and February 2021, *see supra* Discussion Part I.B, Plaintiff cannot establish a claim for

14  failure to engage in the interactive process.  *Accord Nealy*, 234 Cal. App. 4th at 380

15  (affirming summary judgment in part because there was no evidence that a vacant

16  position was available); *Martirosyan*, 2023 WL 6634167, at *7 (granting summary

17  judgment on failure to engage claim because the plaintiff did not provide evidence of

18  a vacant position for which he was qualified).

19      Plaintiff further argues that Defendant violated its legal duty in 2021 by sending

20  Plaintiff all available job openings instead of curating a list of openings for which she

21  was qualified given her permanent restrictions.  (Opp'n at 13.)  To support this

22  argument, Plaintiff cites *Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1386

23  (2000), where the appellate court held that the lower court's "conclusion that

24  requesting appellant 'to continually check the job hotline' constitutes a 'reasonable

25  accommodation' is untenable as a matter of law."  This quotation does not support

26  Plaintiff's position that Defendant violated its duty.  The *Spitzer* court said nothing

27  about an employer's duty to conduct an individual assessment of each job posting.

28  Rather, the *Spitzer* court emphasized that an employer has a duty to take affirmative

1    action in helping an employee find a different position if they are no longer qualified

2    for their prior position due to a disability.  *Id*. at 1389.  Defendant fulfilled this legal

3    obligation by holding two JAMs, sending Plaintiff a letter regarding the Payroll Clerk

4    role, and maintaining communication with Plaintiff during the interactive process,

5    including by sending job openings.  The Court notes that the list of open positions

6    had only two to six positions each, and Plaintiff describes herself as having "possessed

7    deep knowledge of Costco's operations" (Opp'n at 1), such that it was reasonable for

8    Defendant to inform her which positions were open.  More importantly, even if Plaintiff

9    was correct that Defendant was obligated to send a curated list of openings, this claim

10   would still fail because she does not "identify a reasonable accommodation that

11   would have been available at the time the interactive process occurred."[6]  *See Nealy*,

12   234 Cal. App. 4th at 379.

13          Finally, Plaintiff argues that Defendant engaged in the interactive process in

14   bad faith, and in so doing, failed to provide a reasonable accommodation.  (*See*

15   Opp'n at 13.)  This argument, however, conflates the failure to engage claim and the

16   reasonable accommodation claim.  (*See id*. at 11; Mot. at 19.)  In *Martirosyan*, the

17   district court addressed a similar situation where these two claims were seemingly

18   merged by the plaintiff.  2023 WL 6634167, at *7.  For the reasonable accommodation

19   claim, the court granted summary judgment to the defendant because the plaintiff

20   had not presented any evidence of a vacant position for which he was qualified.  *Id*. at

21   *4–7.  As to the failure to engage claim, the court observed that the defendant had

22   engaged in the interactive process.  *Id*. at *7.  Nonetheless, the court held that, to the

23   extent the plaintiff contended that the defendant engaged in bad faith, his claim failed

24   as a matter of law because he "has not identified an available accommodation that the

25   interactive process should have produced . . . ."  *Id*.  Accordingly, the court granted

26   _____

27   [6] Similarly, Plaintiff's contention that Defendant "departed from accepted HR standards" does not
     establish a claim for failure to engage absent a showing that a reasonable accommodation would have
     been available.  (*See* Opp'n at 14.)

28

1    summary judgment as to both claims on the same basis, and the Ninth Circuit affirmed

2    as to both claims on the same basis. *Martirosyan*, 2025 WL 471111, at *1–2.

3         The Court agrees with the reasoning of the *Martirosyan* court and applies it to

4    the situation at hand given the parties' conflation of the claims. Accordingly, to the

5    extent Plaintiff argues Defendant did not engage in good faith in June 2018 or

6    between February 2021 and April 2022, her claim fails for the same reason as her

7    reasonable accommodation claim: she does not identify an available accommodation

8    that the interactive process should have produced.[7]

9         The Court recognizes the power imbalance between an individual with limited

10   expertise and a large corporation with vast experience and resources. Defendant

11   theoretically could have done more to help Plaintiff find a position that suited her.

12   However, the law does not demand that Defendant have done so. Because Plaintiff

13   has not presented any evidence of a reasonable accommodation that was available

14   during either when the interactive process occurred or when it should have taken

15   place, Defendant is entitled to summary judgment as to Plaintiff's claim for failure to

16   engage in the interactive process.

### III.   Discrimination

18        A plaintiff establishes a prima facie case of disability discrimination by showing:

19   (1) she suffers from a disability; (2) she is qualified for the job; and (3) she was

20   subjected to an adverse employment action because of her disability.[8] *Brundage v.*

---

[7] Similarly, the Court rejects Plaintiff's argument that Defendant delayed initiating the interactive process from her injury in February 2018 to the first JAM in February 2021. (*See* Opp'n at 4.) As explained above, *see supra* Discussion Part I.B, because Defendant provided Plaintiff with a reasonable accommodation of unpaid leave, Defendant did not need to offer Plaintiff available positions between June 2018 and June 2020.

[8] Plaintiff brings discrimination claims under California Government Code Sections 12940 and 12945.2. (Compl. ¶¶ 43–53, 111–118.) However, there is no discrimination claim under Section 12945.2. While this Section provides it is unlawful for an employer to "discriminate against" an individual who takes leave, the administrative regulations make clear that this cause of action is for retaliation, not discrimination. *See Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 261 (2001). Accordingly, the Court follows the parties' lead in only analyzing the discrimination claim brought under Section 12940. (*See* Mot. at 9; Opp'n at 18–19.)

1  *Hahn*, 57 Cal. App. 4th 228, 236 (1997).  If the plaintiff makes a prima facie showing,

2  then the employer "must offer a legitimate nondiscriminatory reason for the adverse

3  employment decision." *Id*.  The plaintiff then "bears the burden of proving the

4  employer's proffered reason was pretextual." *Id*. (citations omitted).

5       Plaintiff fails to establish a prima facie case of discrimination.  While there is no

6  dispute that she suffers from a disability, Plaintiff does not present any evidence

7  showing she was qualified to perform her job as an RTV Clerk.  Indeed, Plaintiff

8  concedes that she could not perform this role, with or without accommodation.  (*See*

9  Opp'n at 20.)  This concession is dispositive for this claim because, as the California

10  Supreme Court held:

11       By its terms, [California Government Code] section 12940 makes it clear
         that drawing distinctions on the basis of physical or mental disability is
12       not forbidden discrimination *in itself*.  Rather, drawing these distinctions
         is prohibited *only if* the adverse employment action occurs because of a
13       disability *and* the disability would not prevent the employee from
         performing the essential duties of the job, at least not with reasonable
14       accommodation.  Therefore, in order to establish that a defendant
         employer has discriminated on the basis of disability in violation of the
15       FEHA, the plaintiff employee bears the burden of proving he or she was
         able to do the job, with or without reasonable accommodation.
16

17

18  *Green v. State of California*, 42 Cal. 4th 254, 262 (2007) (emphasis original).

19       Because there is no dispute that Plaintiff could not perform the essential

20  functions of the RTV Clerk role, Plaintiff cannot establish that she was able to do the

21  job even with a reasonable accommodation.  As such, she cannot establish a prima

22  facie case of disability discrimination, and Defendant is therefore entitled to summary

23  judgment as to this claim.[9]

24  ////

25

26  [9] Even if Plaintiff established a prima facie case, Defendant would still be entitled to summary judgment
    because there is no disputed issue of material fact regarding Defendant's nondiscriminatory reason for
27  terminating Plaintiff's employment: Plaintiff was unable to perform the essential functions of any
    available position.  *See Brundage*, 57 Cal. App. 4th at 236 n.1; *supra* Discussion Part I.A.
28

1    **IV.    Failure to Prevent Discrimination**

2         An actionable claim for failure to prevent discrimination "is dependent on a

3    claim of actual discrimination." *Martin v. Bd. of Trs. of California State Univ.*, 97 Cal.

4    App. 5th 149, 173 (2023) (citation omitted).  Plaintiff concedes that her failure to

5    prevent discrimination claim hinges on her claim for discrimination.  (*See* Opp'n at 21–

6    22.)  Because Plaintiff no longer has an actionable discrimination claim, Defendant is

7    necessarily entitled to summary judgment as to Plaintiff's claim for failure to prevent

8    discrimination.

9    **V.    Retaliation**

10        To establish a prima facie case of retaliation, an employee must show: (1) she

11   engaged in a protected activity; (2) the employer subjected the employee to an

12   adverse employment action; and (3) a causal link existed between the protected

13   activity and the employer's action.[10]  *Bareno v. San Diego Cmty. Coll. Dist.*, 7 Cal. App.

14   5th 546, 560 (2017).  If the employee establishes a prima facie case, then "the burden

15   shifts to the employer to provide evidence that there was a legitimate, nonretaliatory

16   reason for the adverse employment action." *Id.* (citation omitted).  If the employer

17   produces "evidence demonstrating the existence of a legitimate reason for the

18   adverse employment action, the presumption of retaliation drops out of the picture,

19   and the burden shifts back to the employee to provide substantial responsive

20   evidence that the employer's proffered reasons were untrue or pretextual." *Id.*

21   (cleaned up).

22        Plaintiff does not establish a prima facie case of retaliation.  Plaintiff alleges in

23   the Complaint that she was retaliated against for taking unpaid leave and requesting

24   reasonable accommodations.  (*See* Compl. ¶¶ 37, 114.)  Plaintiff cannot show a causal

25   link between either of these activities and her termination, however.  Regarding

---

[10] Plaintiff brings retaliation claims under California Government Code Sections 98.6 and 12945.2
(Compl. ¶¶ 33–42, 111–118.)  Section 12945.2 only applies to retaliation for taking leave. *Choochagi v.
Barracuda Networks, Inc.*, 60 Cal. App. 5th 444, 457 (2020).  These claims are analyzed under the same
framework. *See id.* at 458.

1   unpaid leave, Plaintiff does not explain how her termination is causally connected to

2   her use of medical leave.  Indeed, it was upon Defendant's recommendation that

3   Plaintiff took unpaid leave, which weakens any suggestion that Defendant would fire

4   her for this activity.  (*See* Olsen Dep. 79:21–81:21.)  Moreover, Plaintiff began taking

5   medical leave on June 18, 2018, and she was terminated on April 19, 2022.  (Golston

6   Decl. ¶¶ 13, 24.)  The Supreme Court held, "The cases that accept mere temporal

7   proximity between an employer's knowledge of protected activity and an adverse

8   employment action as sufficient evidence of causality to establish a prima facie case

9   uniformly hold that the temporal proximity must be 'very close.'"  *Clark Cnty. Sch. Dist.*

10  *v. Breeden*, 532 U.S. 268, 273 (2001).  The Supreme Court recognized that appellate

11  courts have found gaps of 3 or 4 months to be insufficient to support a finding of

12  causality.  *Id*.  Accordingly, the Court held that the 20-month gap at hand was

13  insufficient.  *Id.* at 274.  Because Plaintiff was terminated 46 months after she took

14  medical leave, there is no temporal proximity to support a finding of causality.  *See id.*

15          As for Plaintiff's request for accommodations, Plaintiff does not explain how her

16  termination is causally related.  Defendant learned about Plaintiff's permanent medical

17  restrictions – and thus need for accommodations – no later than January 12, 2021.

18  (Olsen Dep., Ex. 12.)  Plaintiff was not terminated until 15 months later, which does not

19  support a finding of causality.  *See Clark Cnty. Sch. Dist.*, 532 U.S. at 273.  Plaintiff

20  argues that, because Defendant terminated her after she inquired about a Payroll

21  Clerk position in January 2022, the Court can infer Defendant retaliated against

22  Plaintiff for making this inquiry.  (*See* Opp'n at 21.)  But Defendant told Plaintiff

23  beginning in February 2021 that it would terminate her employment if she could not

24  return to work, which weakens any causal link between Plaintiff's inquiry and her

25  termination.  (*See* Olsten Dep., Ex. 13.)  Moreover, after Plaintiff inquired about the

26  Payroll Clerk position, Golston sent Plaintiff a detailed letter explaining that she was

27  unable to perform the essential functions of this role, and Golston invited Plaintiff to

28  discuss any requested accommodations should a Payroll Clerk position become

                                              19

1  available.  (Olsen Dep., Ex. 28.)  Plaintiff never responded to Golston's letter, which led

2  Defendant to the reasonable conclusion that she was no longer interested in the

3  position or concluded that she could not perform the role with accommodations.

4  (Golston Decl. ¶ 23.)  These facts disprove any causal connection between Plaintiff's

5  inquiry into the Payroll Clerk position and her termination.  As such, there is no causal

6  link between Plaintiff's requested accommodations and her termination.

7        Finally, while not alleged in the Complaint, Defendant addresses Plaintiff's

8  statement in her deposition that she was retaliated against for hiring a workers

9  compensation attorney after she was injured.[11]  (*See* Mot. at 15–16.)  Plaintiff does not

10  say exactly when she obtained a worker's compensation attorney, instead saying it

11  was sometime in 2019.  (*See* Olsen Dep. 151:16–18.)  However, even if Plaintiff

12  obtained an attorney on the last day of 2019, there would still be over a 27-month gap

13  between obtaining counsel and being fired.  Accordingly, there is no temporal

14  proximity to establish causality between Plaintiff hiring a worker's compensation

15  attorney and being fired, and Plaintiff does not present any other reason to support a

16  finding of causality.  *See Clark Cnty. Sch. Dist.*, 532 U.S. at 273; Opp'n at 21.

17        Plaintiff cannot establish a prima facie case of retaliation because there is no

18  evidence of a causal link between any protected activity and her termination.

19  Accordingly, Defendant is entitled to summary judgment as to this claim.[12]

20  ////

21  ////

22

---

23  [11] Though Defendant did not raise this issue, the Court recognizes that this allegation was not in the
Complaint.  A plaintiff cannot allege one theory of liability in a complaint and then "turn around and

24  surprise [a defendant] at the summary judgment stage" with a different theory of liability.  *Coleman v.
Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000).  However, because Defendant did not raise

25  this argument, the Court considers this theory of liability on its merits.

26  [12] As with the discrimination claim, even if Plaintiff established a prima facie case, Defendant would still
be entitled to summary judgment because there is no dispute of fact regarding Defendant's

27  nonretaliatory reason for terminating Plaintiff's employment: Plaintiff was unable to perform the
essential functions of any available position.  *See Bareno*, 7 Cal. App. 5th at 560; *supra* Discussion Part

28  I.A.

1  **VI.  Wrongful Termination**

2          "To recover in tort for wrongful discharge in violation of public policy, the

3  plaintiff must show the employer violated a public policy affecting society at large

4  rather than a purely personal or proprietary interest of the plaintiff or employer."

5  *Holmes v. Gen. Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426 (1993) (cleaned up).  To

6  succeed on a claim for wrongful termination, "a plaintiff must identify a fundamental

7  public policy based on a statutory, constitutional, or regulatory provision."  *Galeotti v.*

8  *Int'l Union of Operating Eng'rs Loc. No. 3*, 48 Cal. App. 5th 850, 856–57 (2020).

9  Because the Court grants summary judgment to Defendant as to all other claims,

10  Plaintiff cannot show that Defendant violated a policy grounded in a statutory,

11  constitutional, or regulatory provision.  *See id.*  Plaintiff concedes that her claim for

12  wrongful termination "is rooted in the same factual allegations and legal violations

13  underpinning" her FEHA claims.  (*See* Opp'n at 22.)  Accordingly, Defendant is

14  entitled to summary judgment as to this claim.  *Accord Hanson*, 74 Cal. App. 4th at

15  229 (holding that "because [plaintiff's] FEHA claim fails, his claim for wrongful

16  termination in violation of public policy fails").[13]

17                                **CONCLUSION**

18          For the reasons set forth above, the Court GRANTS Defendant's Motion for

19  Summary Judgment (ECF No. 60).

20          The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant

21  Costco Wholesale Corporation and CLOSE this action.

22

23          IT IS SO ORDERED.

24  Dated:  __**August 20, 2025**__

25                                              Hon. Daniel J. Calabretta
                                                UNITED STATES DISTRICT JUDGE
26

27  ---
[13] Because there are no remaining claims in this action, the Court does not reach the parties' arguments
concerning punitive damages, as Plaintiff's request for punitive damages is rendered moot.  (*See* Mot.
28  at 17; Opp'n at 22.)